**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANGEL DELEON,

    Defendant - Appellant.

No. 22-2036
(D.C. No. 2:15-CR-04268-JB-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MURPHY**, and **EID**, Circuit Judges.
_____

This appeal is the most recent in a series of cases involving the Sindicato de Nuevo Mexico, a violent prison gang from New Mexico. Appellant Angel DeLeon, a former gang member, was convicted of one count of violent crime in aid of racketeering under 18 U.S.C. § 1959(a) for his role in the 2001 murder of Frank Castillo. DeLeon appealed his conviction, arguing that the district court abused its discretion under Federal Rules of Evidence 403 and 404(b) by admitting evidence of DeLeon's own prior bad acts outside of the murder and by admitting evidence of the gang's violent activity and murders committed by other gang members.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

While his appeal was pending, DeLeon also subsequently filed in the district court a motion for an indicative ruling and an embedded motion for a new trial based on newly discovered evidence of cross-contamination related to DNA evidence used at trial. After the district court denied his indicative-ruling motion, DeLeon did not file a separate notice of appeal; instead, he filed a motion in this Court to supplement the record with his indicative-ruling motion. Although he did not separately appeal the denial of his motion, DeLeon now also challenges that ruling.

For the reasons that follow, we affirm all of the district court's rulings.

## I.

This appeal arises out of a 2015 investigation into the Sindicato de Nuevo Mexico prison gang ("SNM"), which led to the indictment of twenty-four individuals, including Appellant Angel DeLeon, for crimes spanning across three decades. Formed in the early 1980s, SNM has long been affiliated with violence, drug trafficking, and extortion; indeed, to join the gang, a potential member must commit an act of violence, or "earn his bones." R. Vol. I at 167–71.

The 2015 indictment alleged, in general, that SNM was an enterprise engaged in a variety of criminal activity and that the gang used violence in order to increase and maintain its power. DeLeon in particular was charged with one count of violent crime in aid of racketeering ("VICAR"), in violation of 18 U.S.C. § 1959(a)(1), for the 2001 murder of Frank Castillo. In 2019, nearly four years after the charges were first brought, DeLeon (who had been deported to Mexico in 2002) was arrested in

2

Mexico and extradited to the United States. His trial—the fifth trial arising out of the 2015 indictment—was set for September 2021.

Before trial, the parties each filed several motions in limine. In one such motion, DeLeon sought to exclude "all testimony and evidence" regarding SNM—including its activities, members, structure, organization, culture, and murders, among other things—from September 2002 through the present. R. Vol. I at 647–55. DeLeon based his motion on Rules 401, 402, and 403 of the Federal Rules of Evidence, arguing that evidence of SNM's post-2002 activity was irrelevant and unfairly prejudicial, particularly because DeLeon had been deported in 2002 and was no longer involved with the gang. Additionally, at the hearing on the motion, DeLeon stated that he was willing to stipulate to the existence of SNM as an enterprise—one of the elements of the VICAR charge.[1]

In response to DeLeon's motion, the district court gave an oral ruling, stating that it would "give[] the [g]overnment a little bit of leeway to give some color" to explain what an "enterprise" was and how SNM operated, notwithstanding DeLeon's stipulation. R. Vol. III at 513. The district court concluded that it would reach a "soft ruling," *id.* at 517, 520, allowing the government to "prove [ ] up" "three or four incidents" of prior murders committed by SNM members, but also permitting the

---

[1] The VICAR charge required the government to prove that (1) SNM was an "enterprise" as defined in 18 U.S.C. § 1959(b)(2); (2) SNM engaged in, or its activities affected, interstate or foreign commerce; (3) SNM engaged in "racketeering activity" as defined in 18 U.S.C. §§ 1959(b)(1) and 1961; (4) DeLeon murdered Frank Castillo; and (5) DeLeon committed the murder in order to maintain or increase his position in SNM. *See* 18 U.S.C. § 1959; R. Vol. I at 1611.

government to call multiple witnesses to testify as to those murders and to impeach witnesses with evidence of *other* murders, *see id.* at 513–25.

Trial then began. After the jury was empaneled, but before opening arguments, DeLeon raised another evidentiary issue with the district court. Specifically, DeLeon informed the court that he had not received notice from the government regarding any evidence that the government intended to offer under Federal Rule of Evidence 404(b). The government responded that it had reviewed the evidence it intended to offer regarding DeLeon's other acts but concluded that "everything [was] intrinsic," such that the government was not required to provide notice under Rule 404(b). R. Vol. IV at 353. The district court instructed the government to nevertheless provide a letter notifying DeLeon of any such evidence, "so that [DeLeon could] at least make an objection that it's not intrinsic." *Id.* at 354. When DeLeon's counsel argued that the notice would still be untimely, the court responded that "it may be[,] [b]ut they're also going to give you a letter about the intrinsic portion and then we can argue about it," noting that the parties could take each item of evidence "one at a time." *Id.* at 356.

After this exchange, opening argument began. In his opening statement, DeLeon stated that he did not dispute that the first three elements of the VICAR charge—that (1) SNM was an "enterprise," (2) SNM engaged in activities that affected interstate commerce, and (3) SNM engaged in "racketeering activity"—were all satisfied. Thus, DeLeon expressed that the only contested element was whether

DeLeon participated in Castillo's murder. Nevertheless, DeLeon did not concede his SNM membership or his motive to act with an SNM purpose.

The government provided a Rule 404(b) letter the following day, listing twelve acts it intended to introduce and stating its position that the acts were intrinsic. During a break in proceedings, DeLeon raised with the court his view that the letter was insufficient to provide notice. The court asked DeLeon for his position as to whether any of the evidence was not intrinsic; DeLeon responded that none of the government's proffered evidence was intrinsic, except for the evidence of his gang-related tattoos, his status as a gang "enforcer," and his admission to being a gang member. *Id.* at 532–41. Although the court made preliminary rulings as to some evidence, it stated that it was generally taking the objections "under advisement" and would "give [DeLeon] a chance to argue later on," so DeLeon could "always object as it [came] in." *Id.* at 541.

During the prosecution's case-in-chief, the government presented evidence that DeLeon joined SNM around 1998, becoming a "soldier" after having "earned his bones" as a "prospect." *Id.* at 741, 746, 1118–20. In March 2001, an SNM leader wanted to "clean house"—meaning to "hit" (or kill) members who had broken its rules. *Id.* at 919–22. One of the members he wanted killed was Frank Castillo. Under that SNM leader's direction, DeLeon was one of three gang members ordered to strangle Castillo at the Southern New Mexico Penitentiary. A former SNM member who was also involved in the "hit" testified that the plan was to give Castillo heroin, after which DeLeon and another member were to hold Castillo down while a

5

third person choked him. On March 26, 200, the three men carried out the plan and killed Castillo.

Philip Gonzales, another former SNM member who was housed next to DeLeon the summer after the murder, testified that DeLeon told him he was being haunted by Castillo's ghost and that Castillo's ghost would ask him "why?" *Id.* at 2007–09. DeLeon also told Gonzales, "You just had to see his face, the face that he made," which Gonzales thought was a reference to Castillo's face during the strangling. *Id.* at 2018–19.

Much of the prosecution's case-in-chief consisted of the above evidence and testimony from several of DeLeon's co-defendants from SNM, who served as cooperating witnesses. Many of those witnesses also testified as to some of the violent acts they committed as SNM members, including murders and assaults that did not involve DeLeon.

The government also presented DNA evidence from two lab analyses that had been performed on the ligature used to strangle Castillo. An analysis performed in 2001 concluded that a mix of two people's DNA was on the ligature—one of whom was DeLeon. The samples tested in 2001 were fully consumed by the testing and were discarded. In 2014, a different analyst tested a different sample of the ligature and did not identify DeLeon's DNA.

On September 16, 2021, after the parties presented closing argument, the jury found DeLeon guilty. After filing unsuccessful motions for a new trial and for a judgment of acquittal, DeLeon was sentenced to mandatory life imprisonment on

6

December 15, 2021. Judgment was entered against him on March 24, 2022, and DeLeon filed a timely notice of appeal the same day.

Nearly a year later, in February 2023, DeLeon's own expert witness informed DeLeon's counsel that the expert had submitted a complaint regarding cross-contamination at the crime lab that analyzed the DNA evidence used at trial. The expert's complaint led to an investigation of the crime lab, which ultimately revealed that the lab did have recurring issues with cross-contamination.

Based on that investigation—and because this appeal had already been docketed—DeLeon filed a motion for an indicative ruling in the district court, to which he attached a motion for a new trial, pursuant to Federal Rules of Criminal Procedure 33 and 37. DeLeon argued that he was entitled to a new trial because the newly discovered evidence of cross-contamination at the lab undermined the DNA evidence used against him at trial, and he argued that the government's failure to disclose the reports of this contamination violated *Brady v. Maryland*, 373 U.S. 83 (1963). Our Court abated DeLeon's appeal pending the district court's resolution of his motion for an indicative ruling.

The district court thereafter denied DeLeon's motion for an indicative ruling, concluding that the embedded motion for a new trial did not raise a "substantial issue" sufficient to warrant an indicative ruling pending the appeal of DeLeon's conviction. Specifically, the district court rejected DeLeon's arguments with respect to the newly discovered evidence of cross-contamination at the lab, concluding that the evidence was not actually "new" (because DeLeon had presented argument

during trial about the possibility of cross-contamination at the lab), that it was immaterial and cumulative, and that the government had not "suppressed" the information, because nothing indicated that the government had reason to know of the investigation.  Supp. R. Vol. I at 117–22.

DeLeon thereafter did not file a separate notice of appeal regarding the district court's denial of his indicative-ruling motion.  Our Court, however, reinstated the appeal and granted DeLeon's motion to supplement the record on December 6, 2023—but we noted in our order that "[i]t is not entirely clear that the district court's ruling on the motion for an indicative ruling is within the jurisdictional scope of this appeal."  Order, No. 22-2036, slip op. at 1 (10th Cir. Dec. 6, 2023).

## II.

We begin by addressing DeLeon's claim that the district court abused its discretion by admitting evidence of three of DeLeon's other SNM-related acts—beyond his participation in Frank Castillo's murder—under Federal Rule of Evidence 404(b).  DeLeon argues that the evidence of those three acts constituted impermissible character evidence, that each of those acts is extrinsic to the charged conduct, and that the evidence is therefore subject to Rule 404(b)'s requirements, because each of those other acts occurred years prior to the 2001 murder of Castillo that formed the basis of the VICAR charge and were all unrelated to the murder.

Generally, "[w]e review evidentiary decisions for abuse of discretion." *United States v. Silva*, 889 F.3d 704, 709 (10th Cir. 2018).  "A court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable

8

judgment." *Id.* (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001)). When applying this standard, "we will not disturb the district court's ruling 'absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment.'" *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (quoting *United States v. Stiger*, 413 F.3d 1185, 1194 (10th Cir. 2005)).

Notably, however, the abuse-of-discretion standard does not apply if a party has forfeited an argument by failing to raise it below. In such circumstances, we review the forfeited argument for plain error. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). And if that party "also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *Id.*

**A.**

Federal Rule of Evidence 404(b) prohibits the admission of evidence of any "crime, wrong, or act"—other than the charged offense—when offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But Rule 404(b)'s prohibition "only applies to evidence of acts *extrinsic* to the charged crime." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (emphasis added) (quotation omitted). Thus, as a threshold matter, courts analyzing the admissibility of so-called other-act evidence must first determine whether the evidence is "intrinsic" or "extrinsic." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015). And

9

"[i]f the contested evidence is intrinsic to the charged crime, then Rule 404(b) is not even applicable." *Irving*, 665 F.3d at 1212.

Evidence is *intrinsic* (and therefore outside the scope of Rule 404(b)) when it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009). Meanwhile, evidence is *extrinsic* (and therefore within the scope of Rule 404(b)) when it "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Id.* Although that distinction begets no bright-line rules, our Circuit has previously described some criteria that indicate when evidence is intrinsic, such as when the evidence

> (1) was "inextricably intertwined" with the charged conduct, (2) occurred within the same time frame as the activity in the conspiracy being charged, (3) was a necessary preliminary to the charged conspiracy, (4) provided direct proof of the defendant's involvement with the charged crimes, (5) was "entirely germane background information . . . 'directly connected to the factual circumstances of the crime,'" or (6) was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice.

*Kupfer*, 797 F.3d at 1238 (citation modified). Even so, "[w]e have never required that the other-act evidence establish an element of the charged offense," so long as the other act is intimately connected with the factual circumstances of the charged offense. *Irving*, 665 F.3d at 1212.

If the evidence satisfies any of those criteria, then we regard it as intrinsic, and it is admissible unless some independent evidentiary rule applies to exclude it. But if it does not, then we regard it as extrinsic, and it is therefore within the scope of Rule

10

404(b). Even then, however, Rule 404(b) does not bar extrinsic other-act evidence if the evidence is offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Of course, such evidence is also still subject to other evidentiary rules. *See Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). Distilling all these rules, the Supreme Court has explained that extrinsic evidence of a defendant's "other acts" is admissible so long as (1) the evidence is offered for a proper, non-propensity purpose; (2) the evidence is relevant; (3) the probative value of the evidence is not substantially outweighed by its prejudicial effect; and (4) the trial court, upon request, provides a limiting instruction regarding the evidence. *See id.*

Beyond those substantive limitations on the admissibility of other-act evidence, Rule 404(b) also sets forth a procedural notice requirement that applies in criminal cases. That notice requirement—which was amended most recently in 2020—provides that, in a criminal case, the prosecutor must:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> (C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3). Although we previously only required the government's notice "to disclose 'the general nature' of evidence intended to be introduced,"

11

*United States v. Aguilar*, 59 F. App'x 326, 328 (10th Cir. 2003), the 2020 amendments make clear that the government must now go beyond a bare description of the evidence and instead must describe the evidence and explain its non-propensity purpose, *see* Fed. R. Evid. 404(b) advisory committee's note to 2020 amendments. Generally, "[i]f the government does not comply with the notice requirement of Rule 404(b), . . . the offered evidence is inadmissible." *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1241 (10th Cir. 1996). Still, a district court's decision to excuse a lack of pretrial notice for good cause falls within our abuse-of-discretion standard. *See id.*

### B.

At the outset, the government asserts that DeLeon forfeited and waived his arguments with respect to all but one item of evidence. The government concedes that DeLeon preserved his Rule 404(b) challenge with respect to the evidence that DeLeon previously assaulted a rival gang member on behalf of SNM. The government also does not dispute that DeLeon preserved his argument regarding the government's allegedly deficient Rule 404(b) notice, which DeLeon objected to once the jury had been empaneled.

But the government argues that DeLeon forfeited and waived his arguments with respect to all other items of evidence—namely, the evidence that DeLeon performed "yard security" by "hold[ing] knives" for SNM in a prison yard while attempting to join SNM, and that prison officials later "validated" DeLeon as a gang

12

member.  Aple. Br. at 28–30.[2]  For his part, DeLeon claims he preserved his arguments as to those items of evidence, citing portions of the trial transcript where he objected to the sufficiency of the government's late Rule 404(b) notice and where he objected prior to the testimony of two witnesses.

We agree with the government that DeLeon forfeited his arguments by failing to renew his objections to the "yard security" and "validation" evidence when it was offered at trial.  To be sure, as he emphasizes, DeLeon objected to *all* of the other-act evidence at the beginning of trial.  Accordingly, the issue of forfeiture turns on whether those objections were sufficient to preserve DeLeon's arguments, or whether he was required to renew the objections when the evidence was actually offered.

The answer to that question lies largely in Federal Rule of Evidence 103, which states that, to preserve a claim of error in an evidentiary ruling that admits evidence, a party must "timely object[]" and "state[] the specific ground" for the objection, "unless it was apparent from the context."  Fed. R. Evid. 103(a)(1)(A), (B).  Rule 103 also provides that "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection . . . to preserve a claim of

---

[2] DeLeon's opening brief makes passing references to evidence of "eight acts" that the government purportedly sought to introduce, which he claims should have been excluded.  *See* Aplt. Br. at 25, 28.  But, as the government points out (and as the record confirms), the only three items of evidence that were ultimately offered and admitted at trial were (1) the evidence of the past assault, (2) the "yard security evidence," and (3) the "validation" evidence.  *See* R. Vol. IV at 1091–92, 1121–27, 2087.  And, in the section of his reply brief dealing with the Rule 404(b) arguments, DeLeon only addresses those three pieces of evidence.  *See* Reply Br. at 5–6.  Thus, we likewise only address those three pieces of evidence.

error for appeal." Fed. R. Evid. 103(b). Applying this rule, our Court has explained that a party need not "renew an objection when the district court has issued a definitive ruling on a matter," whether in a pretrial ruling on a motion in limine or in an initial ruling during trial. *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993); *see United States v. Fonseca*, 744 F.3d 674, 683–84 (10th Cir. 2014). Likewise, we have explained that even when a court makes a definitive initial ruling in a party's favor, that party must still raise a contemporaneous objection if the court later modifies or violates that initial ruling. *Fonseca*, 744 F.3d at 684.

Here, by contrast, none of DeLeon's objections were "ruled upon without equivocation by the trial judge"—meaning that DeLeon was required to renew each of his objections at trial because the district court had not issued any definitive evidentiary rulings. *Mejia-Alarcon*, 995 F.2d at 986. DeLeon only objected to the "yard security" evidence and the "validation" evidence during a conference at the very beginning of trial, before that evidence was actually offered. But the district court did not make any unequivocal evidentiary rulings at that time; instead, the court expressed that its rulings were preliminary, stating that it was taking DeLeon's objections to the other-act evidence "under advisement" and that it would "give [DeLeon] a chance to argue later on." R. Vol. IV at 541.[3] And although the court

---

[3] Moreover, many of the district court's rulings were tentative or subject to the parties laying the proper foundation later on. But even to the extent that the district court's initial rulings could be understood as definitively excluding the "yard security" evidence (or the "validation" evidence), DeLeon still would have been required to object when that evidence was offered and admitted in violation of the pre-trial ruling. *Fonseca*, 744 F.3d at 684.

14

specifically instructed DeLeon to "object as [the evidence came] in," *id.*, DeLeon did not do so—neither with respect to the "yard security" evidence nor the "validation" evidence, *see id.* at 2087 ("yard security" evidence admitted without objection); *id.* at 1091–92 ("validation" evidence admitted without objection).

Thus, because the district court did not definitively or unequivocally decide the evidentiary issues in its initial ruling, DeLeon was required to raise contemporaneous objections when the challenged evidence was offered. Because he did not do so with respect to either the "yard security" or "validation" evidence, he forfeited those objections. And because DeLeon has failed to argue plain error on appeal, we deem those two arguments waived and decline to review them. *See Leffler*, 942 F.3d at 1196.

## C.

Having concluded that DeLeon waived his challenges to the "yard security" and "validation" evidence, we now address the merits of DeLeon's challenge to the admission of evidence that DeLeon previously assaulted a rival gang member on behalf of SNM—an objection he adequately preserved. DeLeon argues that the district court's decision to admit evidence of his prior assault violated Federal Rule of Evidence 404(b).

Because Rule 404(b) only applies when the proffered other-act evidence is extrinsic to the charged offense, we must first determine whether the challenged evidence is extrinsic or intrinsic. DeLeon contends that the evidence of his prior assault is extrinsic, and therefore subject to Rule 404(b)'s requirements, because it

15

occurred years prior to the 2001 murder of Frank Castillo that formed the basis of the VICAR charge, and the assault was unrelated to the murder. To that end, DeLeon claims that the government only presented evidence of that assault "to paint a picture of a man allegedly committing violent acts in the past, so that the jury could improperly infer [he] was involved in the murder of Frank Castillo." Aplt. Br. at 29.

DeLeon's argument mistakes the murder of Castillo as the sole charged offense. In doing so, DeLeon incorrectly assumes that each of the proffered other acts had to be relevant to that murder. But DeLeon was charged with a VICAR offense—meaning that the government had to prove not only that DeLeon participated in Castillo's murder, but also that DeLeon was a member of SNM and committed Castillo's murder in order to maintain or increase his position in the gang. *See* 18 U.S.C. § 1959; *United States v. Martinez*, 92 F.4th 1213, 1245–46 (10th Cir. 2024).

Thus, with the specifics of the VICAR charge in mind, we conclude that the evidence that DeLeon previously assaulted a rival gang member on behalf of SNM is intrinsic and therefore not subject to Rule 404(b). That evidence consisted of testimony from an SNM gang leader that DeLeon, among other SNM members, assaulted the rival gang member on the leader's orders, which—according to the gang leader—was "done on behalf of the SNM" and was "something that was expected of SNM members" in order to show loyalty. R. Vol. IV at 1126–27. In other words, the evidence of the assault was offered to "provide[] contextual or background information" about the types of actions that SNM members needed to

16

take in order to meet expectations and maintain their position in the gang—and to show that DeLeon himself took those actions. *Parker*, 553 F.3d at 1314. "The government had to explain why [DeLeon] felt motivated to kill" Castillo, and the evidence of the prior assault shed light on its explanation; the evidence "reflected both an existential threat to a member's place and an opportunity—if responded to violently—for advancement." *Martinez*, 92 F.4th at 1245–46. Thus, the evidence of the prior assault is intrinsic because it is intricately connected, and gave substantial context, to DeLeon's motivation for killing Castillo—an element of the VICAR offense that DeLeon did not concede at trial.

Because the evidence of DeLeon's prior assault is intrinsic to the charged VICAR offense, it is not subject to Rule 404(b)'s requirements (including the notice provision), and the district court therefore did not abuse its discretion in admitting it.

**III.**

We next consider DeLeon's argument that the district court abused its discretion by admitting evidence of SNM's general gang activity, including evidence of prior murders committed by other SNM members, despite its pre-trial ruling and despite DeLeon's concession that the gang was a racketeering enterprise. DeLeon argues first that the district court's decision to admit that evidence violated the law-of-the-case doctrine because the decision deviated from the court's earlier pre-trial ruling that limited the government to introducing evidence of "three or four" prior murders. R. Vol. III at 513–25. DeLeon also claims that the district court's decision

to admit that evidence violated Federal Rule of Evidence 403 because the evidence was unduly prejudicial.  We address each of these arguments in turn.

## A.

First, DeLeon argues that the district court violated the law-of-the-case doctrine by admitting evidence of SNM's general gang activity and murders committed by other SNM members because the district court had ruled before trial that it would limit the government to introducing only "three or four" instances of prior SNM gang activity.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  As our Court has explained, "[t]he resolution of the issue need not be explicit" for the doctrine to apply.  *Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1279 (10th Cir. 2024).  Instead, the doctrine "applies to all issues previously decided, either explicitly or by necessary implication."  *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1288 (10th Cir. 2024).

We have also observed that the law-of-the-case doctrine operates both horizontally (meaning that a court is bound by an earlier decision of the same court within the same case) and vertically (meaning that a court is bound by a decision made by a higher court—namely, by a reviewing court's mandate).  *Harris*, 112 F.4th at 1279.  Between those two forms, "vertical law of the case is [the more] restrictive."  *Id.* at 1280.  Thus, the law-of-the-case doctrine usually concerns "a legal

18

decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed." *United States v. Koerber*, 10 F.4th 1083, 1103 n.9 (10th Cir. 2021) (quotation omitted). And, to that extent, the doctrine does not preclude district courts from reconsidering their prior rulings in the course of the same litigation. *See Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007).

DeLeon insists that the district court violated the law-of-the-case doctrine because it purportedly deviated from its pretrial evidentiary ruling that limited the government to introducing evidence of "three or four" prior murders in order to show SNM's activity as a racketeering criminal enterprise. We disagree. The district court was permitted to revisit its evidentiary rulings within the same stage of litigation. *See id.* (noting that "district courts generally remain free to reconsider their interlocutory orders" notwithstanding the law-of-the-case doctrine). Accordingly, the law-of-the-case doctrine does not apply to the district court's decision to admit evidence of additional murders committed by SNM members beyond the "three or four" it initially chose to permit.

**B.**

Next, DeLeon claims that the district court's decision to admit the evidence of SNM's gang activity and other past murders violated Federal Rule of Evidence 403 because that evidence was unduly prejudicial. Under Rule 403, a district court may exclude otherwise-relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.

19

R. Evid. 403. As we have explained, "unfair prejudice"—perhaps the broadest of these circumstances—"means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Silva*, 889 F.3d at 712 (quotation omitted). To that end, "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (quotation omitted).

"In engaging in the requisite balancing" under Rule 403, "we give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value," and we "afford[] the district court considerable discretion in performing the Rule 403 balancing test." *Id.* at 935–36 (cleaned up). And, generally, the "exclusion of evidence under Rule 403 that is otherwise admissible . . . is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (quotation omitted).

With those principles in mind, we turn to the merits of DeLeon's arguments. The crux of DeLeon's argument is that the evidence of SNM's gang activity—including prior murders committed by other SNM members—had very little probative value, especially in light of DeLeon's stipulation that SNM was a racketeering criminal enterprise. Further, DeLeon asserts that the evidence was highly prejudicial because it was violent and emotional, and because it was likely to cause the jury to associate DeLeon's guilt with the violence of others.

20

DeLeon's argument fails.  The district court was within its discretion to balance the scales differently under Rule 403—not least because the evidence was central to the government's theory of the case (namely, that SNM used violence to maintain loyalty and respect among its gang members).  Indeed, we recently addressed this precise issue in an appeal from a separate SNM trial arising out of the same 2015 investigation and indictment.  *See Martinez*, 92 F.4th at 1221–22, 1241–49.  There, the defendant—also a former SNM member—conceded that SNM was a criminal enterprise, but the district court nevertheless admitted evidence of other murders committed by SNM members.  *See id.* at 1242.  We rejected the defendant's Rule 403 challenge to that evidentiary ruling for two reasons.  First, we concluded that "the enterprise-murder evidence had important probative value by showing that SNM used violence to maintain and augment organizational respect; such evidence played a critical role in establishing the government's case on elements [that the defendant] *did contest*."  *Id.* (emphasis in original).  And second, we concluded that "this probative value exceeded any unfair prejudice."  *Id.*

*Martinez* compels the same result here.  Because the evidence of SNM's general gang activity, including the evidence of prior SNM murders, was central to the government's case, that evidence had a high probative value; the district court therefore did not abuse its discretion by concluding that the probative value of the evidence outweighed its prejudicial effect and therefore admitting it.[4]

---

[4] Having rejected each of DeLeon's evidentiary challenges, we also reject his cumulative-error argument.  The doctrine of cumulative error applies where "the

**IV.**

We now turn to DeLeon's argument that the district court abused its discretion by denying his motion for an indicative ruling and the embedded motion for a new trial based on newly discovered evidence and alleged *Brady* violations. DeLeon argues that he is entitled to a new trial based on evidence of cross-contamination at the crime lab that he claims was discovered after trial. That newly discovered evidence, DeLeon argues, undermines the DNA evidence that the government presented at trial, which was "a key piece of the government's case" against him and which was therefore "material and not merely impeaching." Aplt. Br. at 40.

**A.**

Before turning to the merits of DeLeon's claim, we begin by explaining the legal requirements for an indicative-ruling motion based on an embedded motion for a new trial. Following a guilty verdict, a criminal defendant may move the district court to vacate the judgment of conviction and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial based on newly discovered evidence must be filed within three years of the verdict. *Id.* at 33(b)(1).

"If an appeal is pending," however, the district court "may not grant a motion for a new trial until the appellate court remands the case." *Id.* In such

---

cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Herrera*, 51 F.4th 1226, 1288 (10th Cir. 2022) (quotation omitted). Here, as explained, DeLeon has failed to demonstrate any individual errors by the district court; accordingly, DeLeon's cumulative-error argument necessarily fails.

circumstances, a defendant who seeks to file a motion for a new trial may instead file a motion for an indicative ruling, which permits the district court to indicate how it would rule on the underlying new-trial motion if the appellate court were to remand the case. *See id.* at 37(a).

Specifically, Federal Rule of Criminal Procedure 37 permits a district court to review a motion "for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending." *Id.* In reviewing the motion, the district court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id.* Thus, a Rule 37 motion for an indicative ruling provides a mechanism through which the district court may tentatively rule on—or may definitively deny—an underlying, embedded motion for a new trial while an appeal from that trial is already pending.

Our cases dealing with the denial of a Rule 37 motion for indicative relief are limited. Generally, however, a motion for indicative relief is treated like a motion to vacate a judgment that is pending on appeal under Federal Rules of Civil Procedure 60(b) and 62. *See* Fed. R. Crim. P. 37 advisory committee's note to 2011 amendment ("This new rule adopts . . . the practice that most courts follow when a party makes a motion under Rule 60(b) of the Federal Rules of Civil Procedure."); *see also United States v. Vázquez Rijos*, 119 F.4th 94, 127 & n.30 (1st Cir. 2024). And we review the denial of such motions for an abuse of discretion. *See Cummings v. GMC*, 365 F.3d 944, 954 (10th Cir. 2004). Likewise, "[t]he denial of a motion for a new trial based

23

on newly discovered evidence"—which forms the basis of the indicative-ruling motion here—is itself "reviewed for abuse of discretion." *United States v. McCullough*, 457 F.3d 1150, 1167 (10th Cir. 2006).

As to the substance of a motion for a new trial, our Court has routinely cautioned that "[a] motion for a new trial is not viewed with favor and should be treated with great caution." *United States v. Chatman*, 994 F.2d 1510, 1518 (10th Cir. 1993). Thus, a defendant seeking a new trial has the burden to show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Jackson*, 579 F.2d 553, 557 (10th Cir. 1978); *see United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). Further, when a defendant bases a motion for a new trial on newly discovered evidence allegedly withheld in violation of *Brady*, the defendant "must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Cooper*, 654 F.3d 1104, 1119 (10th Cir. 2011) (quotation omitted); *see United States v. Quintanilla*, 193 F.3d 1139, 1148 n.9 (10th Cir. 1999).

**B.**

DeLeon argues that he was entitled to a new trial based on the newly discovered evidence of cross-contamination problems at the crime lab that conducted the DNA testing in his case. But the government raises, as a threshold matter, the issue of our appellate jurisdiction. Because "we must satisfy ourselves that our

24

jurisdiction is proper" before proceeding to the merits, we address this threshold issue first. *Cotton Petroleum Corp. v. U.S. Dep't of Interior*, 870 F.2d 1515, 1521 (10th Cir. 1989).

### 1.

It is not entirely obvious whether we have jurisdiction to review the denial of DeLeon's motion for a new trial based on the newly discovered evidence. After all, DeLeon did not discover the reports of cross-contamination until nearly a year after filing his notice of appeal; he initially appealed his conviction, and it was only later—while his appeal was pending—that he discovered the cross-contamination evidence and filed the indicative-ruling motion and embedded motion for a new trial.

But DeLeon never filed a separate notice of appeal from the district court's denial of his indicative-ruling motion. Instead, he only filed a motion to supplement the record to include his motion and the district court's order denying it. Although our Court granted that motion to supplement the record, we noted in our order that it was "not entirely clear that the district court's ruling on the motion for an indicative ruling is within the jurisdictional scope of this appeal." Order, No. 22-2036, slip op. at 1 (10th Cir. Dec. 6, 2023).

The government addresses two potential jurisdictional issues regarding the indicative-ruling motion. The first is "whether the order is a final, appealable decision under 28 U.S.C. § 1291." Aple. Br. at 50. Although the government flags finality as a potential concern, it nevertheless asserts—and DeLeon does not appear

25

to dispute—that the district court's denial of DeLeon's indicative-ruling motion is a final order for purposes of § 1291.

We agree. In denying the indicative-ruling motion, the district court effectively rejected DeLeon's arguments for a new trial on the merits, concluding that the newly discovered evidence was not actually "new," that it was immaterial and cumulative, and that nothing indicated the government had ever "suppressed" it. *See* Supp. R. Vol. I at 117–22. Because the district court categorically denied the indicative-ruling motion and thereby rejected the merits of DeLeon's embedded motion for a new trial—rather than deferring its consideration for remand or stating that the motion raised a "substantial issue" (as it was entitled to do under Rule 37(a)(1) and (a)(3))—the court "reserved no question on the merits and saved nothing for development in further proceedings." Aple. Br. at 51.

That disposition fits squarely within the meaning of a final, appealable decision under § 1291, which we have defined as a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1261 (10th Cir. 2001) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see Vázquez Rijos*, 119 F.4th at 127–28 & n.30 (suggesting that the denial of a Rule 37 indicative-ruling motion, as opposed to the deferral of a ruling, the issuance of a tentative ruling, or a statement that the motion raises a substantial issue, is a final, appealable order).[5]

---

[5] We note that the Ninth Circuit has seemingly taken a different view of the finality of decisions regarding indicative-ruling motions. In one unpublished

The second issue the government addresses concerns the effect of "DeLeon's failure to file a separate notice of appeal of the district court's denial of his indicative-ruling motion." Aple. Br. at 52. The government asserts that DeLeon was required under the Federal Rules of Appellate Procedure to file a separate notice of appeal because the order denying DeLeon's indicative-ruling motion did not merge with the earlier judgment of conviction from which he had already appealed. Still, despite addressing DeLeon's failure to file a notice of appeal, the government claims that it "affirmatively waives any objection to the untimeliness of DeLeon's notice of appeal, a waiver that this Court may accept because Rule 4's time restriction is a claim-processing rule that can be forfeited or waived." *Id.* at 52–53.

The government is correct that, unlike in civil appeals, the filing of a timely notice of appeal in direct criminal appeals is not jurisdictional. Rather, the timeliness requirement in this context is a claim-processing rule that we must enforce if the government so requests. *See generally United States v. Garduno*, 506 F.3d 1287

---

memorandum order, the Ninth Circuit suggested that where a district court "refus[ed] to grant [a party's] motion to set aside" a judgment that had already been appealed, that "indicative ruling" was not a final order. *Walsh v. Wellfleet Commc'ns*, No. 20-16385, 2021 WL 4796537, at *3 (9th Cir. Oct. 14, 2021). Still, the Ninth Circuit's decision there was seemingly based in part on the fact that the district court concluded it lacked jurisdiction to consider the motion in the first place, rather than a denial of an indicative ruling based on the merits of the party's embedded motion. *Id.* And the Ninth Circuit nevertheless suggested that the party seeking review of the indicative ruling should have either "amend[ed] its existing notice of appeal with [the] Court or file[d] a timely, separate appeal after the district court's order." *Id.*

In any event, even if the denial of an indicative-ruling motion were not a final, appealable order, that would only supply us with an alternative basis for concluding that we lack jurisdiction over this portion of DeLeon's appeal. *See id.*; *Vázquez Rijos*, 119 F.4th at 127 n.30.

(10th Cir. 2007). In this case, the government "affirmatively waives any objection to the untimeliness of DeLeon's notice of appeal[.]" Aplt. Br. at 52. Because "[a] court is not at liberty . . . to bypass, override, or excuse a State's deliberate waiver of a limitations defense," we will accept the government's waiver and decide the issue at hand. *Wood v. Milyard*, 566 U.S. 463, 466 (2012).

Therefore, we proceed to the merits of whether the district court abused its discretion in denying DeLeon's motion for an indicative ruling and embedded motion for a new trial.

**2.**

DeLeon argues that the newly discovered evidence of cross-contamination at the crime lab undermines the DNA evidence that the government presented, which was "a key piece of the government's case" against him and, therefore, "material and not merely impeaching." Aplt. Br. at 40. As a result, DeLeon insists that he is entitled to a new trial.

DeLeon is incorrect. As the government correctly asserts, evidence of cross-contamination issues would not have added anything new to DeLeon's defense, particularly when there was significant non-DNA evidence to corroborate DeLeon's involvement in the Castillo murder. Moreover, DeLeon himself suggests that the evidence could only be used for purposes of impeaching the credibility of the DNA evidence and the witness who conducted the lab analysis. Additionally, regarding the purported *Brady* violations, there is no evidence that the prosecution suppressed the lab evidence—particularly because nothing indicates that the government "actually or

constructively knew of the lab investigation that was spurred by a complaint filed by [DeLeon's] own expert." Aple. Br. at 56–57. Even if that were the case, however, there is no reasonable probability that earlier disclosure of the lab evidence would have changed the results of the proceeding.

Because none of the new evidence could raise a substantial issue about whether DeLeon was entitled to a new trial, the district court therefore did not abuse its discretion in denying DeLeon's motion for an indicative ruling and embedded motion for a new trial on that basis.

## V.

For the foregoing reasons, we AFFIRM the district court's rulings.

Entered for the Court


Allison H. Eid
Circuit Judge